UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Brooks Banker,

      Plaintiff,

      v.                                  Civil Action No. 2:08-cv-122

Carl Moulton,

      Defendant.

## REPORT AND RECOMMENDATION
(Doc. 51)

      This case arises out of a contract for the sale of land in Charlotte, Vermont. The sale never occurred, in part because the Town did not grant the buyer, Plaintiff Brooks Banker, a permit to build a single-family home. Banker now brings this pro se diversity action against the contemplated seller, Defendant Carl Moulton, seeking the return of $50,000 in escrowed funds and other alleged damages. Moulton denies that Banker is entitled to the escrowed funds, and has filed counterclaims for slander of title and breach of contract. Presently before the Court is Banker's motion pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings on (1) Moulton's counterclaims, and (2) Counts One and Two of the Amended Complaint, which seek declaratory and injunctive relief. For the reasons set forth below, I recommend that the motion (Doc. 51) be DENIED.

## Factual Background

      In reviewing a motion for judgment on the pleadings pursuant to Rule 12(c), the Court must accept the non-moving party's allegations as true and draw all reasonable

inferences in that party's favor. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011); *Johnson v. Rowley*, 569 F.3d 40, 43–44 (2d Cir. 2009).  When, as in this case, a plaintiff moves for judgment under Rule 12(c) on claims in his own pleading, allegations in that pleading that have been denied by the non-moving party are generally deemed to be false.  5C Charles Alan Wright et al., Federal Practice and Procedure § 1368 (3d ed. & Supp. 2013); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990) ("[T]he allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false.").  Mindful of these controlling standards of law, and for purposes of this motion only, the Court makes the following factual findings.

On August 4, 2004, Banker and Moulton executed a written Purchase and Sale Agreement ("Agreement") whereby Banker agreed to purchase 34 acres of land in Charlotte, Vermont from Moulton for the sum of $650,000.  Banker subsequently delivered $50,000 to a real-estate agent, with the understanding that the funds would be held in escrow until closing.  The Agreement provided that the closing was contingent upon the Charlotte Planning Commission's written approval of Banker's plans to improve the parcel by constructing a single-family residence.  The Agreement further provided that if Banker was not satisfied with the conditions imposed upon him by the Charlotte Planning Commission, he had the right to cancel the Agreement.  The Charlotte Planning Commission ultimately did not approve Banker's planned construction of a single-family residence on the land.

Banker commenced this action in 2008, seeking specific performance of the Agreement. In his original Complaint, he alleged that Moulton had made certain representations and warranties, including representations that the condition of the property was in compliance with various local, county, and state rules and regulations, and that there were no easements on the property. The Complaint alleged that, in fact, the property was subject to an access easement in favor of an adjoining land owner, and that Moulton had created an unspecified dangerous condition on the property. Banker also claimed that after entering into the Agreement, Moulton violated its terms by mortgaging the property to secure a $250,000 loan. Banker further alleged that a single-family house could not be built on the property, and that Moulton was in default. In addition to his claim for specific performance, Banker sought an abatement of $100,000 in the purchase price. (Doc. 1.)

On December 7, 2011, this case was stayed after Moulton provided the Court with notice of his bankruptcy filing in the United States Bankruptcy Court for the District of New Hampshire. (Doc. 25.) In addition to ordering the stay, the Court ordered Moulton's counsel, Michael Harris, Esq., to file periodic reports to keep the Court apprised of the status of the bankruptcy proceedings. No specific reporting requirements were imposed, and Attorney Harris filed regular six-month status reports with the Court. The Court lifted the stay on March 20, 2013, after receiving notice that the bankruptcy case had been dismissed. (Doc. 37.)

The Court subsequently granted Banker leave to amend his pleadings, and he filed an Amended Complaint on June 13, 2013. (Doc. 48.) The Amended Complaint realleges

3

that the parties entered into the Agreement for the sale of land, and that Banker delivered $50,000 to the escrow agent. Banker also alleges that the Charlotte property has now been sold to a third party, but that Moulton refuses to release the escrowed funds. Accordingly, Banker brings new causes of action seeking: (1) a declaratory judgment declaring him the sole owner of the funds; (2) an injunction requiring the escrow agent to release the funds, with interest; and (3) damages for Moulton's alleged conversion of the funds.

Banker also brings a fourth cause of action for abuse of process. This claim focuses upon the status reports submitted to this Court by Attorney Harris. Banker alleges that Moulton is liable because Attorney Harris declined to disclose: that the Bankruptcy Court had "rejected" the Purchase and Sale Agreement; that Banker had requested the return of the escrowed funds in 2009; that Moulton refused to return the funds; that the Bankruptcy Court had authorized the sale of property; and that the property had been sold to a third party. Banker seeks $50,000 and additional punitive damages on this claim.

In his Counterclaims, Moulton alleges that he supported Banker's efforts to seek approval from the Charlotte Planning Commission, and through counsel, indicated to the Planning Commission that he "was prepared to address any concerns that were under his control as land owner." (Doc. 54 at 3.) When the Planning Commission suggested that Banker explore alternate building sites, Banker allegedly responded that no other site would be acceptable. Moulton claims that Banker subsequently demanded that he

4

"obtain all permits and approvals for [Banker] and also reduce the purchase price by $100,000.00" (*Id.*)

Moulton asserts that after failing to obtain approval from the Planning Commission, Banker's available remedies under the Agreement were to either close on the property, or cancel the Agreement and receive back the escrowed funds. Instead, Banker recorded the Agreement in the Charlotte town land records. Moulton claims that the act of recording "effectively cast a cloud on [his] title to the property thereby unlawfully interfering with Defendant's ability to sell his property to other prospective buyers, until he filed for bankruptcy protection in 2009." (*Id.* at 4.) Moulton also contends that Banker defaulted by failing to exercise his available remedies under the Agreement, and by refusing to discharge the recording until Moulton obtained "all of Plaintiff's permits and approvals." (*Id.* at 5.) The Counterclaims thus set forth causes of action for slander of title and breach of contract.

It is undisputed that the parties entered into the Agreement, and that Banker placed $50,000 with the escrow agent. It is also undisputed that the Bankruptcy Court rejected the original Agreement, that Moulton has not authorized the return of the funds to Banker, and that the money remains in escrow. The parties dispute whether Banker is entitled to the funds. The contents of Attorney Harris's status reports are also undisputed, as they are part of the record in this case. Moulton argues, however, that the reports are irrelevant because the omitted information was not required to be reported to the Court. He also contends that the Bankruptcy Court's approval of the rejection of the Agreement did not render the Agreement void. Now before the Court is Banker's Motion for

5

Judgment on the Pleadings with respect to each of Moulton's counterclaims, as well as Banker's own claims for declaratory and injunctive relief.[1]

## Discussion

### I.  Standard of Review

Banker submits his Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).  Accordingly, as discussed above, the Court must accept as true the non-movant's allegations and draw all reasonable inferences in the non-movant's favor.  *See id.*; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

"To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The pleadings standards enunciated in *Twombly*, and later in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), therefore apply to a motion for judgment on the pleadings, and the Court must determine whether the "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 664.  However, the Court need not credit "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678.  Furthermore, "[a] party is entitled

---

[1] In his post-hearing memorandum, Moulton asks for dismissal of Counts Three and Four of Banker's Amended Complaint.  (Doc. 62 at 7–10.)  Because Moulton has not filed a cross-motion to dismiss, the Court should refrain from considering his arguments for dismissal at this time.

to judgment on the pleadings only if it is clear that no material issues of fact remain to be resolved and that it is entitled to judgment as a matter of law." *Citibank, N.A. v. Morgan Stanley & Co. Int'l, PLC*, 724 F. Supp. 2d 407, 414 (S.D.N.Y. 2010) (citing *Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am.*, 47 F.3d 14, 16 (2d Cir. 1994). On such a motion, the Court is limited to reviewing the pleadings, any documents that are attached thereto, incorporated by reference, or "integral" to the allegations even if not explicitly incorporated by reference, and facts of which the Court may take judicial notice. *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

Consistent with these standards, the Court must accept Moulton's well-pleaded allegations as true and draw all inferences in his favor. Where Banker's allegations have been denied, the Court must consider them as untrue for purposes of his Motion.

## II.   Moulton's Counterclaims

Banker first seeks judgment on the pleadings on Moulton's slander of title counterclaim. To prove slander of title, Moulton must show: (1) that Banker published a false statement concerning Moulton's title; (2) the statement caused special damages; and (3) that Banker acted with malice. *See Wharton v. Tri-State Drilling & Boring,* 2003 VT 19, ¶ 14, 175 Vt. 494, 824 A.2d 531 (mem.). "The essence of the tort is the publication of an assertion that is derogatory to the plaintiff's title to property in an effort to prevent others from dealing with the plaintiff." *Id*.

> The common law treats "publication" for the purposes of slander of title the same way it treats "publication" in defamation actions generally. *See* Restatement (Second) of Torts § 624 cmt. e, § 623A cmt. e (1977).

7

> Virtually any written or oral false statement of fact concerning plaintiff's property made to a third party will satisfy the "publication" element of a slander-of-title action. *See id.* § 623A cmt. e (explaining that publication of the false statement must be made to a third person, but "may be in writing or it may be oral. It may also be implied from conduct and not expressed in words.").

*Sullivan v. Stear*, 2011 VT 37, ¶ 9, 189 Vt. 442, 23 A.3d 663. Whether a statement concerns a person's title revolves around whether it affects that person's ability to make deals with others regarding the disparaged property. *Wharton*, 2003 VT at ¶ 14, 824 A.2d at 537.

Moulton claims that Banker committed slander of title by recording the Agreement. The Vermont Supreme Court has confirmed that recording a document as a public record "is most certainly a publication." *Sullivan*, 2011 VT at ¶ 10, 23 A.3d at 666. Moulton further alleges recording the Agreement interfered with his ability to sell the property, and was done with malice as evidenced by Banker's alleged refusal to discharge the recording when asked to do so.

At this stage in the proceedings, the Court is required to draw all inferences in favor of Moulton, the non-moving party. In light of this requirement, the Court must accept Moulton's allegations both with respect to Banker's alleged interference with the property's marketability, and the claim of malicious conduct. The Court therefore concludes that Moulton has pled a slander-of-title claim that is plausible, and that judgment on the pleadings is inappropriate.

Similarly, the Court cannot conclude that there are no material facts to be resolved with regard to Moulton's breach-of-contract counterclaim. There can be no dispute that a

written contract for the sale of land existed between Banker and Moulton.  Each party to the contract was obligated to a duty of fair dealing between the parties.  Moulton has plausibly alleged a breach of that contract, as Banker's only remedies, according to Moulton's counterclaim, were to either close on the property or accept return of the deposit.  Banker did not pursue either remedy.

Banker claims that Moulton cannot bring a breach-of-contract claim because the bankruptcy court, at Moulton's request, formally rejected the Agreement.  Banker correctly notes that rejection in such a proceeding "gives rise to a remedy for breach of contract in the non-debtor party." *Lavigne v. Hirsch*, 114 F.3d 379, 387 (2d Cir. 1997); *see also* 11 U.S.C. § 365(g)(1).  Thus, Banker himself may have a viable cause of action for breach of contract.  To date, he has not brought such a claim.  Instead, he contends that because the contract was rejected in bankruptcy, Moulton is now barred from bringing his own breach-of-contract claim for conduct that occurred prior to the filing of the bankruptcy petition.  The caselaw cited by the parties does not support this contention.

The Second Circuit has made clear that the bankruptcy code "provisions permitting a debtor to accept or reject an executory contract do not alter the parties' contractual rights." *In re Penn Traffic Co.*, 524 F.3d 373, 383 (2d Cir. 2008).  As one court has explained, rejection "does not embody the contract-vaporizing properties so commonly ascribed to it . . . .  Rejection merely frees the estate from the obligation to perform; it does not make the contract disappear." *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 687, 703 (Bankr. S.D.N.Y. 1992); *see also Thompkins v. Lil' Joe*

9

*Records, Inc.*, 476 F.3d 1294, 1307 (11th Cir. 2007).  In Moulton's case, the bankruptcy court clearly contemplated ongoing rights in the contract, as it rejected the Agreement "without prejudice to the causes of action, counterclaims . . . and other defenses asserted by either party in the civil action pending in the United States District Court for the District of Vermont captioned *Banker v. Moulton*, Civ. 2:08-cv-122."  (Doc. 63 at 1); *see also In re Brown*, 219 B.R. 373, 382 (Bankr. E.D. Pa. 1998) (holding that "the Debtor's rejection of the contracts at issue has no [e]ffect on his right to maintain this action for damages based upon alleged pre-petition breaches of those contracts"), *overruled on other grounds by Halper v. Halper*, 164 F.3d 830, 837 (3d Cir. 1999).  Judgment on the pleadings on Moulton's breach-of-contract claim is thus not appropriate at this time, and the Motion should be DENIED.

## III.    Banker's Claims

Banker also seeks a judgment on the pleadings on two of his four claims.  First, he seeks a declaratory judgment that with respect to his right to receive the escrowed funds.  Moulton has denied that Banker is owed the funds, and has stated plausible claims to the escrowed funds as "liquidated damages."  (Doc. 54 at 5.)  Furthermore, Banker has not established his right to the funds as a matter of law.  A declaratory judgment is typically a form of relief, as opposed to an independent cause of action, and may not be entered unless the prevailing party "has a substantive claim of right to such relief."  *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993).  Banker claims that his "breach[-]of[-]contract claim supports his request for declaratory judgment," but has not

asserted, much less prevailed on, a breach-of-contract claim. (Doc. 61 at 4.) The Court should therefore find that a declaratory judgment is not warranted at this time.

Banker also seeks an injunction in the form of "an order enjoining Defendant to authorize the Escrow Agent to release the Down Payment to Plaintiff together with all interest accrued thereon." (Doc. 48 at 16.) Banker does not specify whether he seeks a temporary or permanent injunction. Presumably the relief he seeks is of a permanent nature. A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Here, Banker has failed to show that money damages are inadequate to compensate for his injury because, in simple terms, money damages are exactly what he seeks. The motion for judgment on Banker's claim for injunctive relief should therefore be DENIED.

## Conclusion

For the reasons set forth above, I recommend that Banker's Motion for Judgment on the Pleadings (Doc. 51) be DENIED.

Dated at Burlington, in the District of Vermont, this 17th day of October, 2013.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).